IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXIS FLORES and VIRGINIA GOOLD, for themselves and all others similarly situated, Plaintiffs, v. EAGLE DINER CORP., JAMES ROKOS, MARIA ROKOS and MARKO ROKOS, Defendants. | Case No. _____ JURY TRIAL DEMANDED |

## COLLECTIVE AND CLASS ACTION COMPLAINT

Alexis Flores and Virginia Goold ("Plaintiffs"), by and through their undersigned attorneys, hereby make the following allegations against Eagle Diner Corp., James Rokos, Maria Rokos and Marko Rokos (collectively "Defendants") concerning their acts and status upon actual knowledge and concerning all other matters upon information, belief and the investigation of their counsel:

## NATURE OF THE ACTION

1. Plaintiffs bring this action to redress Defendants' violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 333.101, *et seq.* ("PMWA").

2. Plaintiffs bring their FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all people who worked as an Eagle Diner Server during the maximum limitations period (the "FLSA collective").

3. Plaintiffs bring their PMWA claims on a class action basis pursuant to Fed. R. Civ. P. 23 for all people who worked as Eagle Diner Servers since March 23, 2015 (the "putative Class").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §§ 1331.

5. This Court has supplemental jurisdiction over Plaintiff's Pennsylvania claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

7. Plaintiff Alexis Flores is an individual who resides in Philadelphia County, PA. From August 2016 to August 2017, Ms. Flores worked as a Server at Eagle Diner in Warminster, PA. Throughout this time, Ms. Flores worked about 50-60 hours per week, was paid at the tipped minimum wage rate for all of her work and made required contributions into Defendants' tip pool. Ms. Flores is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint.

8. Plaintiff Virginia Goold is an individual who resides in Bucks County, PA. From October 2014 to May 2017, Ms. Goold worked as a Server at Eagle Diner in Warminster, PA. Throughout this time, Ms. Goold worked about 40-60 hours per week, was paid at the tipped minimum wage rate for all of her work and made required contributions into Defendants' tip pool. Ms. Goold is personally familiar with, and has been personally affected by, the policies and practices described in this Complaint.

9. Eagle Diner Corp. is a Pennsylvania business corporation that, throughout the relevant period, has owned and operated the Eagle Diner at 739 W. Street Road in Warminster, PA.

10. James Rokos is the President and Treasurer of Eagle Diner Corp. Throughout the relevant period, James Rokos has been involved in the day-to-day business operation of Eagle

Diner, exercised operational control over Eagle Diner and controlled significant business functions of Eagle Diner, including: determining employee salaries, making hiring decisions, controlling corporate checking and payroll accounts, tracking the hours and paying the wages at issue in this matter and acting for Eagle Diner to devise, direct, implement and supervise the wage and hour policies and practices challenged in this action.

11. Maria Rokos is a co-owner of Eagle Diner and the wife of James Rokos. During the relevant period, Maria Rokos has been involved in the day-to-day business operation of Eagle Diner, exercised operational control over Eagle Diner and controlled significant business functions of Eagle Diner, including: determining employee salaries, making hiring decisions, controlling corporate checking and payroll accounts, tracking the hours and paying the wages at issue in this matter and acting for Eagle Diner to devise, direct, implement and supervise the wage and hour policies and practices challenged in this action.

12. Marko Rokos is the son of James and Maria Rokos. During the relevant period, Marko Rokos has been involved in the day-to-day business operation of Eagle Diner, exercised operational control over Eagle Diner and controlled significant business functions of Eagle Diner, including: determining employee salaries, making hiring decisions, controlling corporate checking and payroll accounts, tracking the hours and paying the wages at issue in this matter and acting for Eagle Diner to devise, direct, implement and supervise the wage and hour policies and practices challenged in this action.

**MATERIAL FACTS**

13. Eagle Diner is a restaurant located at 739 W. Street Road in Warminster, PA and is open 24 hours a day, 365 days a year.

14. Defendants employ Servers to wait on customers in Eagle Diner, answer questions about the menu, take food and drink orders, place food and drink orders, collect food and drink orders from service areas, deliver food and drinks to customers and provide excellent customer service.

15. Maria Rokos prepares a monthly schedule assigning Servers to work one of four shifts each day, either 8:00am to 3:00pm, 3:00pm to 11:00pm, 11:00pm to 6:00am, or 6:00am to 2:00pm. Maria Rokos keeps the schedule in pencil so Servers' scheduled shifts and hours can be easily changed.

16. Defendants track Servers' work time with a time-clock kept at the cash register.

17. Servers are not allowed to use the time-clock themselves. Instead, James Rokos, Maria Rokos, Marko Rokos and Eagle Diner Managers or Cashiers use the timeclock to punch Servers in and out of work.

**Untipped Work Minimum Wage Violation**

18. On a daily basis, Defendants require Servers to perform a significant amount of untipped side work that is unrelated to their tipped occupation as a Server ("untipped work"), including:

- Kitchen side-work (performed "off-the-clock" in the kitchen for an hour or more each shift) like cleaning the kitchen "line" area, cleaning microwaves, cleaning toaster ovens, cleaning service trays, picking up kitchen mats, sweeping the kitchen, putting down kitchen mats, checking stock and restocking the refrigerator with creamers, salad dressing, whipped cream, jelly and syrups, checking stock and re-stocking the "line" with food, supplies, plates and "to go" boxes, cutting lemons and filling Sanibuckets;

- Running side-work (performed "on-the-clock" throughout the day for an hour or more per shift) like sweeping the restaurant, vacuuming the restaurant, putting up chairs, cleaning under tables, taking down chairs, cleaning the sneeze guard, window glass and mirrors, lining up tables, cleaning coffee pots and tea urns, cleaning

4

>the syrup dispenser, restocking plates, glasses, cups, napkins, straws, fruit and bread, refilling condiments, salt shakers, pepper shakers, sugar shakers, salad dressing containers, tartar sauce containers, cocktail sauce containers and ketchup containers, filling ice bins and updating the blackboard with specials.

19. Servers routinely spend more than two hours on untipped work in an eight-hour shift (*i.e.*, more than 25% of their work time), not including additional side-work performed "off-the-clock" after their shift has ended.

20. Servers' untipped work is clearly unrelated to their tipped occupation because it is often performed in the kitchen where no customers are present, during non-peak times between meals when no customers are present, or when Servers are "off-the-clock" and not being paid.

21. Servers working a double-shift are expected to complete the required untipped work assignments in each shift.

22. Although they could easily do so, Defendants do not use the timeclock, or any other method, to record Servers' performance of untipped work, or maintain any contemporaneous record of Servers' untipped work.

23. Defendants pay Servers at the tipped minimum wage rate of $2.83 per hour for all untipped work they perform "on-the-clock" instead of the regular minimum wage rate of $7.25 per hour.

24. Defendants do not pay Servers any wages for the untipped work they perform "off-the-clock". At least half of Servers' untipped work each shift is performed "off-the-clock".

25. Ms. Flores spent more than 25% of her time each workweek performing untipped work. About half of Ms. Flores' untipped work was performed "on-the-clock" and paid at the tipped minimum wage rate of $2.83 per hour with no consideration for the fact she was performing untipped tasks. About half of Ms. Flores' untipped work was performed "off-the-clock". Ms.

Flores was never given an option to track or record her "off-the-clock" untipped work and received no wages for this work.

26. Ms. Goold spent more than 25% of her time each workweek performing untipped work. About half of Ms. Goold's untipped work was performed "on-the-clock" and paid at the tipped minimum wage rate of $2.83 per hour with no consideration for the fact she was performing untipped tasks. About half of Ms. Goold's untipped work was performed "off-the-clock". Ms. Goold was never given an option to track or record her "off-the-clock" untipped work and received no wages for this work.

**Invalid Tip Pool Minimum Wage Violation**

27. Defendants maintain a mandatory tip pool into which Servers must pay $2.00 from their tips each hour they work. For example, Defendants require a server who works a seven-hour shift to contribute $14.00 to the tip pool.

28. Defendants ostensibly collect these pooled tips to provide Bussers with tips in addition to their wages. In truth, Defendants convert Servers' pooled tips for their own benefit, using these funds to satisfy their wage obligations to Bussers rather than provide them with tips. On occasions when Bussers are not scheduled to work or do not come in to work, the "house" (i.e., Defendants) takes possession of the tip pool and does not distribute these funds.

29. Ms. Flores usually made a required tip pool contribution of about $10.00 or $12.00 at the end of her shift, depending on the number of hours she worked. From speaking to other employees at Eagle Diner, Ms. Flores understands that Defendants do not provide Bussers with any tips in addition to, their wages and, instead, either use the tip pool to satisfy their wage obligations to Bussers or keep the tip pool for the "house".

30. Ms. Goold usually made a required tip pool contribution of about $10.00 at the end of her shift, depending on the number of hours she worked. From speaking to other employees at Eagle Diner, Ms. Goold understands that Defendants do not provide Bussers with any tips in addition to, their wages and, instead, either use the tip pool to satisfy their wage obligations to Bussers or keep the tip pool for the "house".

31. Defendants' improper tip pooling practices violate the tip credit provisions of the FLSA and PMWA, which invalidates Defendants' tip pool and requires Defendants to pay their Servers at the regular minimum wage rate of $7.25 per hour for all hours worked.

### Overtime Wage Violation

32. Defendants require and permit their Servers to work more than 40 hours per week.

33. Defendants maintain a strict policy requiring Managers and Cashiers to ensure that Servers' timecards capture only part of their total hours worked each week and, in any event, capture no more than 40 hours per workweek.

34. As a result, Defendants do not create or maintain accurate contemporaneous records of their Servers' work.

35. Defendants maintain a strict policy against paying wages for hours not recorded by the timeclock. As a result, Servers receive no wages for certain hours they work each week and never receive any overtime premium wages despite routinely working more than 40 hours per week.

36. Ms. Flores routinely worked 50-60 hours per week as a Server for Defendants but, while waiting tables, saw and heard James Rokos and Maria Rokos instruct Managers or Cashiers to "clock everybody out" while they were still working to avoid recording all their hours, specifically overtime hours, on the timeclock. As a result, Defendants did not pay Ms. Flores for

all the hours she worked and never paid her any wages at an overtime premium rate.

37. Ms. Goold routinely worked 40-60 hours per week as a Server for Defendants but, while waiting tables, saw and heard James Rokos and Maria Rokos instruct Managers or Cashiers to "clock everybody out" while they were still working to avoid recording all their hours, specifically overtime hours, on the timeclock. As a result, Defendants did not pay Ms. Goold for all the hours she worked and never paid her any wages at an overtime premium rate.

## FLSA COLLECTIVE ACTION ALLEGATIONS

38. Plaintiffs bring their FLSA claims for themselves and all people who worked as an Eagle Diner Server during the maximum limitations period.

39. Plaintiffs belong to the FLSA collective they seek to represent, because they worked as Eagle Diner Servers during the relevant period.

40. The FLSA collective is "similarly situated," as defined by 29 U.S.C. § 216(b), because its members were subjected to the Company-wide policies and practices described herein.

41. Plaintiffs estimate that the FLSA Collective may include up to several hundred members. Defendants' payroll and personnel records, among other documents should reveal the total number of people who qualify to participate in the FLSA Collective.

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

42. Plaintiffs bring their PMWA claims for claims for themselves and all people who worked as Eagle Diner Servers since March 23, 2015.

43. Class treatment of Plaintiff's PMWA claims is appropriate because the putative Class satisfies the requirements of Fed. R. Civ. P. 23.

44. The putative Class is so numerous that joinder of all its members would be impracticable. During the relevant period, up to several hundred people have worked as Eagle

Diner Servers.

45. Plaintiffs' claims are typical of the claims of putative Class members, and they have no interests that are antagonistic to, or in conflict with, the interests of the putative Class.

46. There are many questions of law and fact common to the claims of the putative Class members because, *inter alia*, this action concerns the legality of the Company-wide compensation policies and practices described herein. The legality of these policies will be demonstrated by applying generally applicable legal principles to common evidence.

47. Plaintiffs will fairly and adequately represent the interests of the putative Class members and have retained competent and experienced counsel for this purpose.

48. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual Class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

49. Allowing Plaintiffs' Pennsylvania wage law claims to proceed as a class action will be superior to requiring the individual adjudication of each Class member's claim, since requiring hundreds of hourly-paid employees to file and litigate individual wage claims would cause an undue burden on Defendants, the Class members and the Courts. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually. Moreover, as the damages suffered by each Class member are relatively small, the expenses and burdens associated with individual litigation would make it difficult for plaintiffs to bring individual claims. Further, the presentation of separate actions by individual Class members could create a risk for inconsistent and varying adjudications, establish

incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of Class members to protect their interests.

## COUNT I
## VIOLATION OF THE FLSA
## Untipped Work Minimum Wage Violation

50. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

51. Defendants are "employers" as defined by 29 U.S.C. § 203(d).

52. Plaintiffs and the FLSA collective members are "employees" as defined by 29 U.S.C. § 203(e)(1).

53. The wages Defendants pay to Plaintiffs and the FLSA collective are "wages" as defined by 29 U.S.C. § 203(m).

54. Defendants are an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

55. Plaintiffs and the FLSA collective are similarly-situated individuals within the meaning of 29 U.S.C. §216(b).

56. 29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce an employers' failure to comply with their requirements.

57. Throughout the relevant period, Defendants have been obligated to comply with the FLSA's requirements, Plaintiffs and the FLSA collective members have been covered employees entitled to the FLSA's protections, and Plaintiffs and the FLSA collective members have not been exempt from receiving wages required by the FLSA for any reason.

58. The FLSA requires employers to pay employees a minimum wage of $7.25/hour. *See* 29 U.S.C. §206(b).

59. Under the FLSA's tip-credit provisions, an employer of tipped employees may, under certain circumstances, pay those employees less than $7.25/hour by taking a "tip credit" against its minimum wage obligation.

60. An employer may not take a "tip credit" when it requires or allows tipped employees to perform untipped tasks that are unrelated to their tipped work (i.e., "dual jobs"); when it requires or allows tipped employees to perform untipped tasks that, although related to their tipped work, exceed 20% of their work hours in any workweek; or when it fails to inform tipped employees of the provisions of the tip-credit subsection of the FLSA. *See* 29 U.S.C. § 203(m) (tip credit provision "shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection").

61. Defendants willfully violate the FLSA by requiring or allowing Servers to perform untipped tasks that are unrelated to their tipped occupation while paying them the tipped minimum wage for all this work.

62. Defendants willfully violate the FLSA by requiring or allowing their Servers to perform untipped tasks that, although related to their tipped work, exceed 20% of their work hours in any workweek while paying them the tipped minimum wage for all this work.

63. Plaintiffs and the FLSA Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct, which has unlawfully deprived them of legally-mandated wages due for the untipped work they performed.

## COUNT II
## VIOLATION OF THE FLSA
## Invalid Tip Pool Minimum Wage Violation

64. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

65. The FLSA provides that tipped employees are entitled to retain all of the tips they receive but allows the "pooling of tips among employees who customarily and regularly receive tips." *See* 29 U.S.C. § 203(m).

66. The U.S. Department of Labor Field Operations Handbook provides that, in the context of operating a tip pool, an employer may not retain any of an employee's tips for any purpose. *See* DOL Field Operations Handbook § 30d04 (12/15/16), citing 29 CFR 531.54.

67. Defendants require Servers to participate in a tip pool as a condition of their employment.

68. Defendants collect pooled tips from Servers under the pretense this money is used to supplement Bussers' wages. In reality, however, Defendants improperly take possession of Servers' pooled tips and either retain these funds or use the tip pool to satisfy their wage obligations to Bussers rather than provide them with tips.

69. By engaging in this conduct, Defendants have acted with willful and/or reckless disregard for the FLSA Collective members' rights under the FLSA.

70. Plaintiffs and the FLSA Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct, which has unlawfully deprived them of tip income through the maintenance of an illegal tip pool.

### COUNT III
### VIOLATION OF THE FLSA
### Failure To Pay Overtime Wages

71. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

72. 29 U.S.C. § 207(a)(1) requires employers to pay their employees an overtime rate, equal to at least 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

73. Defendants have intentionally violated this provision of the FLSA through common, Company-wide policies and practices that include: permitting Servers to work more than 40 hours per week; depriving Servers of the ability to make their own timecard entries, maintaining a strict policy against logging all work hours, specifically including overtime hours, on the timeclock; failing to maintain an accurate contemporaneous record of Servers' overtime work; and failing to pay Servers' any wages for their overtime work.

74. By engaging in this conduct, Defendants have acted with willful and/or reckless disregard for the FLSA Collective members' rights under the FLSA.

75. Plaintiffs and the FLSA Collective members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime premium wages owed for overtime work they performed and from which Defendants derived a direct and substantial benefit.

**COUNT IV**
**VIOLATION OF THE PMWA**
**Invalid Tip Pool Minimum Wage Violation**

76. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

77. PMWA Section 3(d)(2) provides that tipped employees are generally entitled to retain all of the tips they receive but allows the "pooling of tips among employees who customarily and regularly receive tips." *See* 43 P.S. § 333.103(d)(2).

78. Defendants require Servers to participate in a tip pool as a condition of their employment.

79. Defendants' tip pool violates the PMWA because Defendants, acting as the "house", improperly take possession of Servers' pooled tips and either retain these funds or use the tip pool to satisfy their wage obligations to Bussers rather than provide them with tips.

80. By engaging in this conduct, Defendants have acted with willful and/or reckless disregard for the putative Class members' rights under the PWMA.

81. Plaintiffs and the putative Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct, which has unlawfully deprived them of tip income through the maintenance of an illegal tip pool.

## COUNT V
## VIOLATION OF THE PMWA
### Failure To Pay Overtime Wages

82. Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

83. PMWA Section 4(c) requires employers to pay their employees overtime compensation of "not less than one and one-half times the employee's regular rate" for all hours worked over 40 in a given workweek. *See* 43 P.S. § 333.104(c).

84. Under the PMWA, overtime is calculated based on the number of hours worked in a "workweek", defined in controlling regulations as "a period of 7 consecutive days". *See* 34 Pa. Code § 231.42.

85. Throughout the relevant period, PMWA Section 8 required Defendants to "keep a true and accurate record of the hours worked by each employee and the wages paid to each." *See* 43 P.S. § 333.108.

86. Defendants have intentionally violated these provisions of the PMWA through common, Company-wide policies and practices that include: permitting Servers to work more than 40 hours per week; depriving Servers of the ability to make their own timecard entries, maintaining a strict policy against logging all work hours, specifically including overtime hours, on the timeclock; failing to maintain an accurate contemporaneous record of Servers' overtime work; and failing to pay Servers' any wages for their overtime work.

87. By engaging in this conduct, Defendants have acted with willful and/or reckless disregard for Plaintiff's and the putative Class members' rights under the PMWA.

88. Defendants have no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff and the putative Class members all wages mandated by the PMWA.

89. Plaintiffs and the putative Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of legally-required wages for work they performed from which Defendants derived a direct and substantial benefit.

WHEREFORE, Plaintiffs respectfully pray for an Order:

a. Certifying this matter to proceed as a collective action with respect to Counts I-III and as a class action with respect to Counts IV-V;

b. Approving Plaintiffs as adequate Class representatives;

c. Appointing Stephan Zouras, LLP to serve as Class Counsel;

d. Finding Defendants willfully violated the applicable provisions of the FLSA and PMWA by failing to pay all required overtime wages to Plaintiff and the collective / class members;

e. Finding that Defendants willfully violated the applicable provisions of the FLSA and PMWA by maintaining an illegal tip pool;

f. Granting judgment in favor of Plaintiffs and the collective / class members

    against Defendants, and each of them, jointly and severally, on Counts I-V;

g. Awarding all available compensatory damages in amounts to be determined;

h. Awarding all available liquidated damages in amounts to be determined;

i. Awarding pre-judgment interest on all compensatory damages due;

j. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

k. Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

l. Awarding any further relief the Court deems just, necessary and proper; and

m. Maintaining jurisdiction over this action to ensure Defendants' compliance with the foregoing.

## JURY DEMAND

Plaintiffs demand a jury trial as to all claims so triable.

                                  Respectfully Submitted,

Dated: March 22, 2018          */s/ David J. Cohen*
                                  David J. Cohen
                                  STEPHAN ZOURAS, LLP
                                  604 Spruce Street
                                  Philadelphia, PA 19106
                                  (215) 873-4836

                                  James B. Zouras (*pro hac* forthcoming)
                                  Ryan F. Stephan (*pro hac* forthcoming)
                                  STEPHAN ZOURAS, LLP
                                  205 N. Michigan Avenue, Suite 2560
                                  Chicago, IL 60601
                                  312-233-1550

                                  *Attorneys for Plaintiffs and the Putative Class and Collective Members*

# **CONSENT TO JOIN**

### *Flores v. Eagle Diner, et al.*
### United States District Court, Eastern District of Pennsylvania

Complete and Mail, Fax or E-mail to:

Stephan Zouras, LLP
Eagle Diner Wage Action
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax: (312) 233-1560
E-mail: lawyers@stephanzouras.com

By signing below, I state that I have been employed as a Server by Eagle Diner within the past three years and hereby consent to join this lawsuit seeking unpaid wages based on Defendants' alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*

I hereby designate the law firm Stephan Zouras LLP, to represent me for all purposes in this action.

I hereby designate Class Representatives Alexis Flores and Virginia Goold as my agents to make decisions on my behalf concerning this lawsuit, the method and manner of conducting the lawsuit, the entering of an agreement with counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

| | |
|---|---|
| 3/21/2018 | *Alexis Flores* (DocuSigned) |
| Date | Signature |
| | Alexis Flores |
| | Print Name Clearly |

**\*Statute of limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**

# CONSENT TO JOIN

*Flores v. Eagle Diner, et al.*
**United States District Court, Eastern District of Pennsylvania**

Complete and Mail, Fax or E-mail to:

Stephan Zouras, LLP
Eagle Diner Wage Action
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
Fax: (312) 233-1560
E-mail: lawyers@stephanzouras.com

By signing below, I state that I have been employed as a Server by Eagle Diner within the past three years and hereby consent to join this lawsuit seeking unpaid wages based on Defendants' alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.*

I hereby designate the law firm Stephan Zouras LLP, to represent me for all purposes in this action.

I hereby designate Class Representatives Alexis Flores and Virginia Goold as my agents to make decisions on my behalf concerning this lawsuit, the method and manner of conducting the lawsuit, the entering of an agreement with counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3/21/2018
_____
Date

DocuSigned by:
*[signature]*
1DE1AD5D06DA4A9...
_____
Signature

Virginia Goold
_____
Print Name Clearly

**\*Statute of limitations concerns mandate that you return
this form as soon as possible to preserve your rights.**