# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXIS FLORES and VIRGINIA GOOLD,
*for themselves and all others similarly
situated*,
        Plaintiffs,

v.

EAGLE DINER CORP., *et al.*,
        Defendants.

**CIVIL ACTION**
No. 2:18-cv-01206-AB

**August  21, 2019**
                                    **Anita B. Brody, J.**

## MEMORANDUM

Alexis Flores and Virginia Goold, on behalf of themselves and all others similarly situated, bring this class and collective action lawsuit against Eagle Diner Corporation, James Rokos, Maria Rokos, Marko Rokos, and Zisi Rokos ("the Rokoses").[1]  Eagle Diner is a restaurant in Warminster, Pennsylvania owned by the Rokoses.  Flores and Goold, former Servers at the Eagle Diner, allege that the restaurant and the Rokoses violated the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, and the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, by implementing illegal tip-pool and overtime policies during Flores's and Goold's times of employment.[2]

Flores and Goold now submit an Unopposed Motion for Preliminary Class and Collective Action Settlement Approval.  Plaintiffs move for an order: (1) preliminarily certifying Plaintiffs' proposed settlement class; (2) preliminarily approving the Parties' class settlement; (3) approving their FLSA settlement; (4) appointing Alexis Flores and Virginia Goold Settlement

---

[1]  I exercise jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

[2]  Flores and Goold bring their Pennsylvania Minimum Wage Act claims as a class action.  I therefore apply Federal Rule of Civil Procedure 23 and related caselaw to their claims.  *See, e.g.*, *Parker v. NutriSystem, Inc.*, 620 F.3d 274, 276 (3d Cir. 2010).  Flores and Goold bring their federal Fair Labor Standards Act claims as a collective action under 29 U.S.C. § 216(b), which, along with related statutory provisions and caselaw, governs their FLSA claims. *Id.*

Class Representatives; (5) appointing Stephan Zouras LLP as Class Counsel; (6) approving the Parties' Proposed Notice of Class Action and Collective Action Settlement ("Proposed Notice"); (7) appointing a claims administrator, Atticus Administration LLC; (8) setting a schedule for disseminating notice, opting out, objecting, and/or withdrawing consent; and (9) scheduling a final settlement approval hearing. For the reasons below, I will grant Plaintiffs' motion.

## I. BACKGROUND

### 1. Flores's and Goold's Claims

Defendant Eagle Diner is a restaurant in Warminster, Pennsylvania, that is owned and operated by the remaining Defendants, the Rokoses. In August 2018, Plaintiffs filed a notice of suggestion of bankruptcy relating to Eagle Diner's August 8, 2018 Chapter 11 bankruptcy filing. Plaintiffs Flores and Goold worked as servers at the Eagle Diner. Flores and Goold allege that the Defendants engaged in a variety of illegal practices relating to paying Flores and Goold and other employees at the Eagle Diner. Flores and Goold allege that, during their time as servers, Defendants: (1) operated a mandatory tip pool into which servers were required to contribute a fixed sum from their tips each shift; (2) paid servers a reduced wage and used tips to cover the difference between the reduced wage and the minimum wage; (3) used the tip pool to pay bussers' wages; and (4) failed to pay Servers all overtime wages.

In March 2018, Flores and Goold filed this lawsuit. In July 2018, I held an initial case management conference. On October 5, 2018, after a period of discovery, Plaintiffs filed a Motion for Conditional Certification of their Collective Action Class. On January 30, 2019, the Parties submitted their Unopposed Motion for Preliminary Class and Collective Action Settlement Approval.

2.  The Proposed Settlement Agreement and Proposed Notice

The proposed settlement agreement in this case purports to resolve all putative Class Members' wage and hour claims against the Rokos Defendants.  *See* Pls.' Mot. at 3. Specifically, Class Members will release the Rokoses from any and all claims that were or could have been brought based on the facts alleged in the Amended Complaint, including all claims relating to overtime pay, minimum wages, and other claims for damages, penalties, liquidated damages, attorney's fees and expenses flowing from the conduct alleged in the Complaint.  *Id.* at 5.  The settlement purports to entitle all putative Class Members, *i.e.*, all people who worked as a Server at Eagle Diner between March 22, 2015 and December 12, 2018 (the "Class"), to anticipate and claim a benefit.  *See id.*; *see also generally* Settlement Agreement (Pls.' Ex. A) ("the Settlement Agreement").

In return, Defendants propose to pay up to $162,500.00 to resolve this litigation: $88,875.00 for Class Members' damages claims; two separate $5,000.00 enhancement awards to the two Named Plaintiffs; up to $53,625.00 in attorney's fees; and up to $10,000.00 to reimburse "out-of-pocket" costs incurred by Class Counsel and pay settlement administration costs.  *See* Agreement at ¶¶ 4.1, 4.7, 4.12, 4.14, 4.15.  Each Class Member will receive a pro-rata share of the Settlement Fund, calculated based upon the Class Member's total earnings during the Class Period of March 22, 2015 through December 12, 2018.  *Id.* at ¶ 4.7.  The Class Member settlement awards will be paid 50% as W-2 wages (with typical withholding taken) and 50% as 1099 interest, liquidated damages, and/or penalties (without withholding).  *Id.*  Approximately 129 Class Members will be entitled to claim payments from the settlement.  Any returned or un-cashed checks issued to Settlement Class Members shall be distributed to a *cy pres* fund to be agreed upon by the Parties after a 120-day acceptance period.  *Id.*

The Settlement Agreement outlines a notice plan that will permit the Settlement Class Members to evaluate the proposed settlement and decide whether to participate. *Id*. at ¶ 4.8. Under this proposed plan, Plaintiffs will disseminate a Settlement Notice to all Class Members that: (1) describes the Class and the litigation; (2) describes the proposed settlement, including the nature of the monetary recovery to be awarded to each Class Member and the scope of the proposed releases; (3) identifies Class Counsel; (4) discloses Class Counsel's request for an award of attorney's fees and costs reimbursements; (5) explains the Class Member's right to request exclusion from the settlement, identifies the procedure for requesting exclusion and describes the consequences of exclusion; (6) explains the Class Member's right to object to the settlement and identifies the procedure for submitting settlement objections; and (7) announces the time and location of the final approval hearing. *Id*.; *see also* Proposed Notice (Pls.' Mot. Ex. B). Defendants agreed to provide Plaintiffs with the last-known address of each Class Member within fourteen days after entry of this preliminary approval order. *See* Settlement Agreement ¶ 4.6. Thereafter, Plaintiffs will mail the proposed Settlement Notice to each Class Member, make reasonable efforts to track any returned pieces, obtain updated addresses and perform any necessary re-delivery services, assisted as needed by Defendant. *Id*. ¶ 4.8.

## II. DISCUSSION

### A. Preliminary Certification of the Settlement Class

Plaintiffs move for preliminary certification of the Settlement Class. At the preliminary approval stage of a class action settlement, a court may preliminarily certify a settlement class pursuant to Federal Rule of Civil Procedure 23(e) and reserve the certification decision for a later date. *In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 583-84 (3d Cir. 2014) [hereinafter NFL I]. "[F]or uncertified settlement classes [this] makes sense,

particularly from a notice perspective." *Id*. at 583. "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id*. at 586. Accordingly, I reserve the final certification decision until after notice of the proposed Settlement Agreement has been sent to putative Class Members.

"This preliminary determination employs a 'less rigorous analysis than that necessary for final certification' because courts conduct a 'fairness hearing in order to issue a final class certification and approve the settlement.'" *In re: Shop-Vac Mktg. & Sales Practices Litig.*, MDL No. 2380, 2016 WL 3015219, at *3 (M.D. Pa. May 26, 2016) (quoting *In re: Amtrak Train Derailment*, MDL No. 2654, 2016 WL 1359725, at *2, *4 (E.D. Pa. Apr. 6, 2016)); *see also NFL I*, 775 F.3d at 586 (noting that when the district court made a preliminary determination on class certification, "it reserved the 'rigorous analysis'" on certification until after the fairness hearing. In making this preliminary certification determination a court examines whether "the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Manual for Complex Litigation* § 21.632 (4th ed. 2019); *In re: Shop-Vac*, 2016 WL 3015219, at *3 (same).

Plaintiffs seek certification of a Rule 23(b)(3) settlement class. Federal Rule of Civil Procedure 23(a) contains four threshold requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) imposes two additional requirements: that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule 23(b)(3) requirements are commonly referred to as predominance and superiority.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*).

"[T]he party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."  *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015).  However, the existence of a settlement means that "certain Rule 23 considerations . . . are not applicable."  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013).  For example, because a settlement obviates the need for trial, concerns regarding the manageability of a Rule 23(b)(3) class disappear.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) ("[C]oncerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class." (citing *Amchem*, 521 U.S. at 620)).

### 1.  Rule 23(a) Requirements

#### a.  Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  The parties represent more than 120 Class Members in this case.  *See* Pls.' Mot. at 6 ("Defendants confirm that the proposed Settlement

Class includes approximately 129 people.").  Accordingly, Plaintiffs satisfy the numerosity requirement of Rule 23(a).

### b.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy the commonality requirement, class members' claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Commonality may be shown by "demonstrat[ing] that the class members 'have suffered the same injury.'"  *Id*. (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 (1982)).  A single common question or fact is sufficient to satisfy the commonality requirement of Rule 23(a)(2).  *Wal-Mart*, 564 U.S. at 359; *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

The members of the proposed class in this case satisfy the commonality requirement because they were subject to several common employment and wage policies and practices during their time of employment with the Eagle Diner.  These common policies and practices include: "common time and attendance systems and procedures; a common payroll system; a common policy of requiring Plaintiffs and putative Class Members to work more than 40 hours per week without proper compensation; and common tip pool practices."  *See* Pls.' Mot. at 7.  Defendants do not contest that they applied the policies and practices at issue to all employees, although they deny liability.  The Class Members' claims also revolve around similar if not identical injuries that stem from the same allegedly illegal policies and practices of Defendants. The Class Members therefore satisfy the commonality requirement.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality inquiry asks "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55).

The Third Circuit has "set a low threshold for satisfying" the typicality requirement. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001), *as amended* (Oct. 16, 2001). The typicality requirement "acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" *Id.* (quoting *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom.*, *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)). "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton*, 259 F.3d at 183-84.

Flores and Goold allege that they and all putative Class Members suffered economic damages from Defendants' employment practices. At this stage, Plaintiffs satisfy the typicality requirement because the claims of the named Plaintiffs and the putative Class Members involve the same conduct by Defendants. I will hear objections to this aspect of the settlement as the approval process continues.

### d. Adequacy of Representation

The final prong of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class

they seek to represent." *Amchem*, 521 U.S. at 625. The adequacy of representation requirement addresses two components: (1) the qualifications of class counsel; and (2) the interests and incentives of the class representatives. *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir. 2012).

### i. Adequacy of Class Counsel

When examining settlement classes, courts "have emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995).

Plaintiffs seek the appointment of Plaintiffs' law firm, Stephan Zouras LLP, as Class Counsel. The attorneys from Stephan Zouras who have appeared in this case, including David Cohen, James Zouras, and Ryan Stephan, have extensive knowledge of employment law, complex litigation and class and collective action practice, and have substantial experience handling class actions.

Throughout the course of this litigation, the attorneys from Stephan Zouras LLP have identified and investigated potential claims in the action. They collected evidence to support and submitted a motion for conditional certification that was mooted by their motion for settlement approval. Moreover, Stephan Zouras LLP has vigorously prosecuted the action at arm's length from Defendants. Although Defendants have represented that Defendants are impecunious, Stephan Zouras LLP has effectively and quickly reached a resolution of the claims at issue. Accordingly, Stephan Zouras LLP adequately represents the putative class.

### ii. Adequacy of Class Representatives

"A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). "[T]he linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey*, 681 F.3d at 183. The purpose of the adequacy requirement is to identify intra-class conflicts that may prevent the representative plaintiffs from adequately representing the entire class. *Id.* at 183-4. "An intra-class conflict will not necessarily prevent certification if the settlement agreement contains sufficient structural protections to ensure that the interests of the class will be adequately represented despite the conflict." *Id.* at 185.

Only a fundamental intra-class conflict will violate Rule 23(a)(4). *Id.* at 184. "A fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class." *Id.* at 184 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)). Additionally, "[a] conflict concerning the allocation of remedies amongst class members with competing interests can be fundamental." *Id.* Thus, a court must address two questions to determine whether the representative plaintiffs adequately represent the putative class: "(1) whether an intra-class conflict exists; and if so, (2) whether that conflict is 'fundamental.'" *Id.*

Plaintiffs are adequate representatives of the proposed Settlement Class. No fundamental intra-class conflict exists because there is no evidence to suggest that Flores and Goold do not share the same strong interest in establishing Defendants' liability and seeking the same type of damages for the same allegedly illegal pay policies. I will hear objections to this aspect of the settlement as the approval process continues.

### 2. Rule 23(b)(3) Requirements

### a. Predominance

Under Rule 23(b)(3), a class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623, to determine whether the proposed class "'would achieve economies of time, effort, and expense,'" *id.* at 615 (quoting Fed R. Civ. P. 23(b)(3) advisory committee's notes (1966 amendments)). The predominance inquiry is a more stringent version of the commonality analysis; common questions must drive the litigation. *See Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("[T]he commonality requirement 'is subsumed by the predominance requirement.'" (quoting *Georgine*, 83 F.3d at 626)); *Warfarin*, 391 F.3d at 528 (noting the predominance requirement to be "far more demanding" than the commonality requirement).

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Although it is sometimes necessary to determine whether the elements of each claim can be proved through evidence common to the class, *Sullivan*, 667 F.3d at 306, a settlement "obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws," *Sullivan* 667 F.3d at 304.

Here, the allegation is that the Rokos Defendants violated Pennsylvania wage and hour law through several broadly-applied compensation policies and practices, including tip-pool requirements and overtime policies that were applied to all Class Members during the Class

Members' time at Eagle Diner.  Accordingly, Plaintiffs satisfy the predominance requirement.

### b. Superiority

Rule 23(b)(3) requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication.'" *Warfarin*, 391 F.3d at 533-34 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)).  In determining whether a settlement class action is superior, a court "consider[s] the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re Nat'l Football League Players Concussion Injury Litig*., 821 F.3d 410, 434-35 (3d Cir. 2016), *as amended* (May 2, 2016) [hereinafter *NFL II*] (citing Fed. R. Civ. P. 23(b)(3)(A)-(D)).

The Parties indicate that there are at least 120 putative Class Members with claims in this case.  This settlement on a class-wide basis is superior to individual adjudication of the Class Members' claims because it provides putative Class Members with more prompt compensation. Accordingly, Plaintiffs satisfy the superiority requirement.

### 3. Ascertainability

"A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).  To demonstrate ascertainability, a plaintiff must show that: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id*. (internal

quotation marks and citations omitted).

The Parties' proposed class is ascertainable because all putative Class Members are former employees that can be identified through Defendants' employment records. This class is therefore defined with reference to an objective criterion with a reliable and administratively feasible mechanism for determining whether the putative Class Members fall within the class.

### 4. Conclusion

In conclusion, I will preliminarily certify the Settlement Class because the Settlement Class appears to satisfy the requirements of Rule 23.

### B. Preliminary Approval of the Proposed Settlement

Plaintiffs move for preliminary approval of the Settlement Agreement. Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. *See* Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5). At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement. *See* Fed. R. Civ. P. 23(e)(2). If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval.

In deciding whether to grant preliminary approval, a court determines whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive

compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mehling v. New York Life Ins.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007) (quoting *Thomas v. NCO Fin. Sys.*, No. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002)); *Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-3737, 2011 WL 1833108, at *2 (E.D. Pa. May 12, 2011) (stating same standard); *Tenuto v. Transworld Sys., Inc.*, No. 99-4228, 2001 WL 1347235, at *1 (E.D. Pa. Oct. 31, 2001) (same).

Under Rule 23, a settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. *See Mehling*, 246 F.R.D. at 472. In making a preliminary determination, my first and primary concern is whether there are any obvious deficiencies that would cast doubt on the proposed settlement's fairness. I will also consider whether the negotiations occurred at arm's length, and whether the proposed settlement provides preferential treatment to certain class members. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

### 1. The Settlement Is Within the Range of Possible Approval

#### a. There Are No Obvious Deficiencies to Cast Doubt on the Proposed Settlement's Fairness with Respect to the Relief Provided to the Class

There are no obvious deficiencies in the settlement to indicate that it is not fair, adequate, or reasonable. The agreement represents a reasonable compromise on Plaintiffs' claims. If the Parties were to continue to litigate rather than settle this action, Plaintiffs would face several substantial litigation hurdles that could bar greater recovery. Perhaps most importantly, the corporate Defendant in this case, which is a small, family-owned diner outside of Philadelphia, has filed a notice of bankruptcy. The remaining Defendants have asserted that they are impecunious and, as individual defendants, are subject to FLSA liability only where they meet

statutory requirements relating to their extent of financial interest and operational control of the business. *See Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014). Proving this additional element would require additional discovery and briefing beyond the corporate defendant in this case. In addition to these hurdles, Plaintiffs face the substantial litigation risks inherent in FLSA and wage lawsuits. Nonetheless, Plaintiffs have achieved a six-digit settlement in less than a year of litigation. Therefore, at this stage, for the purposes of preliminary approval of the proposed settlement, there are no obvious deficiencies to cast doubt on the proposed settlement's fairness.

Although there are no obvious deficiencies to cast doubt on the proposed settlement's fairness with respect to the relief provided to the class, I will approve the settlement's provision relating to attorney's fees with one clarification. I approve the settlement to the extent it allows Class Counsel to retrieve attorney's fees of up to $53,625.00 and Class Counsel's out-of-pocket litigation costs and settlement administration costs of up to $10,000.00.[3] I will consider approving the attorney's fees award and costs at a later stage in litigation upon a greater showing by Class Counsel relating to whether these fee and cost awards are reasonable and appropriate in this case.

### b. The Proposed Settlement Appears to Be the Product of Good Faith, Extensive Arm's Length Negotiations after Sufficient Discovery under the Circumstances

All Parties in this case are represented by experienced counsel. Although this case reached settlement relatively quickly after about nine months of litigation, the settlement in this case follows Counsel's substantial pre-filing research, factual and legal analysis of Plaintiffs'

---

[3] The terms of the Settlement Agreement satisfy this requirement. *See* Settlement Agreement ¶ 4.14 ("Class Counsel may make an application to the Court for an award of Class Counsel's fees in an amount not to exceed one-third of the Maximum Gross Settlement Amount, plus reasonable expenses as awarded by the Court. Such application will be filed in connection with the Parties' Final Approval Motion.") (emphasis added).

claims, analyses of Defendants' financial statuses and legal defenses, and "assessment of Class members documents and data and a thorough assessment of the strengths, weakness, and risks inherent to the Parties' respective positions." Pls.' Mot. at 15. Although the Parties have not described extensive formal discovery in this case, the Plaintiffs have at least developed the facts of their case in relation to Plaintiffs' motion for conditional certification of the FLSA collective action (ECF No. 24) and their motion to amend the complaint (ECF No. 19). This factual development and initial discovery plausibly indicates that a simple and expeditious resolution of Plaintiffs' claims, especially for an agreed-upon value of more than $150,000, is a viable and advantageous disposition of the case for both Parties under the circumstances. There is no evidence, therefore, to indicate at this stage that the Proposed Settlement was not the product of good faith, arm's-length negotiations between Counsel for the Parties involved in this case.

### c. There Appears to Be No Preferential Treatment of Certain Settlement Class Members and Class Counsel has Adequately Represented the Class

The proposed Settlement does not appear to provide undue preferential treatment to any individual Class Member. The Settlement Agreement provides that all putative Class Members are entitled to an amount of money directly linked to their hours worked. This method of dividing the award is not only fair but will allow for a feasible and effective form of administration. Although not all putative Class Members will receive the same award, the differential awards will be fair. The settlement agreement also gives the two named Plaintiffs in this case $5,000 each as an incentive award. I find that these incentive awards are reasonable and fair.

In sum, the Settlement Agreement falls within the range of possible approval. Therefore, I will grant preliminary approval of the Settlement Agreement.

### C.  The FLSA Settlement

"FLSA claims may be compromised or settled in two ways: (1) supervision by the Department of Labor, pursuant to 29 U.S.C. § 216(c), or (2) approval by the district court, pursuant to 29 U.S.C. § 216(b)."  *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 776 (E.D. Pa. 2016).  "Without guidance from the Third Circuit, district courts within this Circuit have looked to the standard set forth by Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), when a party seeks judicial approval of an FLSA settlement agreement pursuant to 29 U.S.C. § 216(b)."  *Id.*  Under the *Lynn's* framework, an FLSA settlement must be a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Lynn's*, 679 F.2d at 1355.

I find that the Parties' proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.  First, for the reasons discussed in the above analysis of the class action settlement, I find that the Parties' settlement of the Plaintiffs' FLSA claims is fair and reasonable.  Second, I find that that the Parties' settlement resolves a bona fide FLSA dispute.  A dispute is "bona fide" where it involves "factual issues rather than legal issues such as the statute's coverage and applicability."  *Howard*, 197 F. Supp 3d at 777.  A proposed settlement resolves a bona fide dispute where the settlement's terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute" and are not a "mere waiver of statutory rights brought about by an employer's overreaching."  *Lynn's*, 679 F.2d at 1354.  The Parties' settlement satisfies this requirement.  Plaintiffs sued Defendants in federal court alleging various wage and hour violations.  The settlement is designed to and does provide compensation for those claims.

For these reasons, I will approve the Parties' proposed settlement of their FLSA collective action claims.

### D. The Proposed Form and Manner of Notice

Under Rule 23(e)(1)(B) of the Federal Rules of Civil Procedure, a district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), a court must also ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see Amchem*, 521 U.S. at 617. Rule 23(c)(2)(B) provides:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "In addition to the requirements of Rule 23, due process further requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *NFL II*, 821 F.3d at 435 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Parties have submitted a proposed "Notice of Settlement of Class and Collective Action and Settlement Hearing" (the "Proposed Notice"). The Parties' Proposed Notice includes information about the Class definition, the named Plaintiffs, the claims involved in this lawsuit, the amount of monetary recovery, the scope of the release in the settlement (including an exact quotation of the release provision itself), and the other terms of the settlement. The

representations in the release correspond accurately to the provisions in the Settlement Agreement itself. The Notice is also relatively clear, well-organized, understandable and "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* I therefore approve the Parties' Proposed Notice. However, my approval is conditioned upon the Parties' implementing several changes to be disseminated to the Parties before distribution of the notice.

As discussed above, for purposes of preliminary approval, I will approve attorney's fees of <u>up to</u> $53,625.00 and Class Counsel's out-of-pocket litigation costs and settlement administration costs of <u>up to</u> $10,000.00. Accordingly, also, the amount to be distributed among Class Members will be <u>at least</u> $88,875.00. In addition to implementing the changes referenced above, before circulating Notice to potential Class Members, class counsel must amend the notice to reflect these changes to the monetary award. Again, there is nothing in the record to suggest that this attorney's fees award will not ultimately be approved as submitted, but until the proposed fee and cost awards are finally approved, the notice and other materials should reflect that they are not final.

## III. CONCLUSION

I will grant the Parties' Unopposed Motion for Preliminary Class and Collective Action Settlement Approval.

<div style="margin-left: 40%;">
s/Anita B. Brody<br>
_____<br>
ANITA B. BRODY, J.
</div>

Copies **VIA ECF 8/21/2019**